UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    Case No. 23-CR-0224(2) (PJS/LIB)

                        Plaintiff,

v.                                                               ORDER

SHARON ROSEBEAR,

                        Defendant.

Lindsey Middlecamp, UNITED STATES ATTORNEY'S OFFICE, for
plaintiff.

Aaron Morrison, OFFICE OF THE FEDERAL DEFENDER, for defendant.

Defendant Sharon Rosebear was convicted by a jury of one count of felony child
neglect in violation of 18 U.S.C. §§ 1151 and 1153 and Minn. Stat. § 609.378 subd. 1(a)(1).
Rosebear was charged in connection with the death of her seven-year-old
granddaughter, J.F., who lived with Rosebear and who died as a result of being denied
adequate food and medical care.  This matter is before the Court on Rosebear's motion
for a judgment of acquittal, or, in the alternative, a new trial [ECF No. 170].  For the
reasons that follow, Rosebear's motion is denied.

## I.  ACQUITTAL

Under Fed. R. Crim. P. 29, "the court on the defendant's motion must enter a
judgment of acquittal of any offense for which the evidence is insufficient to sustain a

conviction." In ruling on a Rule 29 motion, a court must view the evidence in the light most favorable to the government, resolve all evidentiary conflicts in the government's favor, and accept all reasonable inferences that support the jury's verdict. *United States v. Cook*, 603 F.3d 434, 437 (8th Cir. 2010). A court should not grant the motion unless no reasonable jury could have found the defendant guilty. *Id.*

Rosebear was convicted of one count of felony child neglect under Minn. Stat. § 609.378 subd. 1(a)(1), pursuant to the Major Crimes Act, 18 U.S.C. § 1153. Section 609.378 provides, in relevant part:

> A parent, legal guardian, or caretaker who willfully deprives a child of necessary food, clothing, shelter, health care, or supervision appropriate to the child's age, when the parent, guardian, or caretaker is reasonably able to make the necessary provisions and the deprivation harms or is likely to substantially harm the child's physical, mental, or emotional health is guilty of neglect of a child . . . . If the deprivation results in substantial harm to the child's physical, mental, or emotional health, the person may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both.

*Id.*

Rosebear raises three grounds for acquittal: (1) that the evidence was insufficient to prove that she was a "caretaker" of J.F., *id.*; (2) that the evidence was insufficient to prove that she was "reasonably able to make the necessary provisions" for J.F., *id.*; and

(3) that § 609.378 is unconstitutionally vague.  The Court will address each argument in turn.

### A.  Caretaker

To convict Rosebear of child neglect under § 609.378, the government was required to prove that Rosebear was a "caretaker" of J.F..  The statute defines "caretaker" as "an individual who has responsibility for the care of a child as a result of a family relationship or who has assumed responsibility for all or a portion of the care of a child."  Minn. Stat. § 609.376 subd. 3.  As the Court instructed the jury, nothing in that definition prevents a child from having more than one caretaker.  *See State v. Willis*, No. A12–0606, 2013 WL 1092217, at *7 (Minn. Ct. App. Mar. 18, 2013) (noting that "the statute is broad and there is no authority which provides that a [parent]'s presence is a defense" for a non-family-member charged under § 609.378).

In arguing that the government failed to prove that she was J.F.'s caretaker, Rosebear contends that the home in which she lived with J.F. was actually divided into two households.  In the first household, Rosebear took care of her son Derrick's five children.  In the second household, her son (and co-defendant) Julius Fineday took care of his own five children (including J.F.).  Rosebear points to evidence that she had legal custody of only Derrick's children, that she sought food benefits to cover only the needs of Derrick's children, that she did not allow J.F. to sleep in her bedroom, that she did

not take J.F. to the casino and waterpark (but did take Derrick's children), and that she

did not enroll J.F. in school.[1] She also points to text messages and Facebook messages

presented by the government indicating that Rosebear considered Fineday to be

primarily responsible for J.F.'s care. *See, e.g.*, Gov. Ex. 19 at 019-002–04.

The jury heard all of this evidence, of course. But the jury also heard evidence

that Rosebear sometimes provided food and clothing for *all* of the children in her house

(including J.F.), as well as evidence of statements by Rosebear in which she indicated

that she took a parental role with respect to *all* of the children in the house (including

J.F.). *See, e.g.*, Gov. Ex. 19 at 019-011, 019-016; Gov. Ex. 20 at 20-006, 20-021–29. Most

importantly, though, the jury heard evidence that Rosebear was the sole adult in the

house supervising J.F. and the rest of Fineday's children just days before J.F.'s death, at

a time when it was obvious from J.F.'s swollen face, impetigo, skeletal frame, and other

symptoms that she was suffering from a significant illness and badly needed medical

attention. In fact, the jury saw messages from Rosebear complaining that she had been

left alone to care for Fineday's children and vowing to charge Fineday $15 per hour for

providing that care. *See, e.g.*, Gov. Ex. 19 at 019-002–04. In short, the evidence amply

supports the jury's conclusion that Rosebear either had "responsibility for the care of

---

[1]Neither party ordered transcripts of the trial nor cited any testimony, and
Rosebear has not cited any record evidence in her briefing. The Court has therefore
relied on its recollection of the evidence received at trial, and will cite to trial exhibits
when useful.

[J.F.] as a result of a family relationship" or had "assumed responsibility for all or a portion of the care of [J.F.]."  Minn. Stat. § 609.376 subd. 3.

Rosebear stresses that she did not plan to watch Fineday's children in the days leading up to J.F.'s death, pointing out that in her messages, she was lamenting being stuck with the kids because Fineday had disappeared.  *See* Gov. Ex. 19 at 019-002–04. Obviously, though, a person can "assume[] responsibility for all or a portion of the care of a child" without planning in advance to do so.  Minn. Stat. § 609.376 subd. 3. Rosebear does not dispute that, during that crucial period, she had (at the very least) taken on the same level of responsibility as a babysitter.  After all, Rosebear said that she was going to charge Fineday $15 per hour *for taking care of J.F.* (and his other children).  That evidence is sufficient to sustain her conviction.  *Cf. State v. Perry*, 725 N.W.2d 761, 766–67 (Minn. Ct. App. 2007) (affirming sufficiency of evidence for child-endangerment conviction under Minn. Stat. § 609.378 subd. 1(b)(2) where defendant "knowingly permitted her minor grandchildren, whom she was babysitting, to be present during a drug sale").

### B. Reasonably Able

Rosebear also argues that the government failed to prove beyond a reasonable doubt that she was "reasonably able" to provide J.F. with necessary food or health care as required for conviction under Minn. Stat. § 609.378.  She points to evidence that she

only received supplemental welfare benefits to support Derrick's children—i.e., the children of whom she had legal custody—and she suggests that it would not have been reasonable for her to seek medical care for J.F. when that was Fineday's primary responsibility. In response, the government highlights evidence that: Rosebear regularly sold food stamps at a discount and used some of her limited resources to gamble at local casinos, *see, e.g.* Gov. Exs. 15A, 15B; Gov. Ex. 20 at 20-008–17; Rosebear admitted that there was enough food in the house for all ten children; Rosebear owned a working vehicle that she could have used to bring J.F. to the Red Lake Hospital (which Rosebear passed while driving to the casino shortly before J.F. died); and free medical services for J.F. were available at an ambulance station about a mile from Rosebear's home, as well as at the Red Lake Hospital.

Here again, the most important evidence the jury heard was that Rosebear was the only adult caring for J.F. during the days shortly before J.F.'s death, when J.F.'s symptoms made obvious her need for medical attention. The fact that Rosebear could have picked up a phone and called an ambulance to take J.F. to the hospital—in and of itself—adequately supports the jury's finding that Rosebear was reasonably able to provide J.F. with the medical care she needed. And that evidence, combined with the evidence that Rosebear had the ability to provide adequate food to J.F., is more than sufficient to sustain the jury's verdict.

Rosebear's only response on this point is that there was no evidence that Fineday would have allowed emergency medical technicians ("EMTs") to enter Rosebear's home to examine J.F. Rosebear's argument makes no sense. Rosebear was acting as a caretaker to J.F. shortly before her death precisely because Fineday had gone missing. Obviously, Fineday could not have blocked EMTs from entering Rosebear's home when he was nowhere near that home. Putting that aside, there was no evidence suggesting that Fineday would have blocked EMTs from treating J.F. or that he had ever prevented any medical provider from examining or treating any of his children. In fact, the jury heard that it was Fineday who called 911 and let the first responders into the home on the night of J.F.'s death. The evidence overwhelmingly supported the jury's conclusion that Rosebear would, at the very least, have been reasonably able to secure life-saving attention for her granddaughter when she was caring for her granddaughter shortly before her death, during which time her granddaughter's need for medical care was apparent. *Cf. Willis*, 2013 WL 1092217, at *9 (affirming sufficiency of evidence for conviction under § 609.378 subd. 1(a)(1) where defendant failed to seek medical care when need would have been obvious).

*C. Void for Vagueness*

Finally, Rosebear moves for acquittal on the basis that the definition of the term "caretaker" under Minn. Stat. §§ 609.376 subd. 3 and § 609.378 subd. 1(a)(1) is unconstitutionally vague. A statute is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). Much of Rosebear's argument has already been addressed by Judge Brisbois in his Report and Recommendation ("R&R") on Rosebear's pre-trial motion to dismiss the indictment. ECF No. 82. The Court adopted that R&R, *see* ECF No. 88, and continues to agree with its analysis. But Rosebear raises a few new arguments based on the evidence presented at trial.

According to Rosebear, § 609.376 does not give clear enough guidance as to who may be subject to criminal liability under § 609.378, largely because the statute could potentially assign to a child's distant family members "responsibility for the care of a child as a result of a family relationship," Minn. Stat. § 609.376 subd. 3, and because the statute places no temporal limit on "who has assumed responsibility for all or a portion of the care of a child." *Id.* But as the government points out, a court evaluating a vagueness challenge to a statute must "first determine if [the] statute is vague *as applied to the defendant's conduct*" before considering whether the statute is vague on its face.

-8-

*United States v. Burgee*, 988 F.3d 1054, 1060 (8th Cir. 2021) (emphasis added; citation omitted); *see also United States v. Bramer*, 823 F.3d 908, 909 (8th Cir. 2016) ("A defendant who engages in some conduct that is clearly prohibited cannot complain of the vagueness of the law as applied to the conduct of others." (cleaned up)).

The only reason Rosebear offers for why the statute is vague *as applied to her* is that six of J.F.'s family members—her mother, her grandfather, her uncles, and her aunts—had a "family relationship" with J.F. (or might have "assumed responsibility" for a portion of J.F.'s care) but were arbitrarily not prosecuted. Minn. Stat. § 609.376 subd. 3. But there are at least three problems with Rosebear's argument:

First, the statute does not define as a caretaker everyone who has "a family relationship" to a child; instead, the statute defines caretaker as "an individual *who has responsibility for the care of a child* as a result of a family relationship." Minn. Stat. § 609.376 subd. 3 (emphasis added). An aunt of J.F.'s who lived overseas and who never had contact with J.F. would have been in a "family relationship" with J.F., but the government would surely have been unable to prove that the aunt had "responsibility for the care of [J.F.]" as a result of being related to her.

Second, if Rosebear were correct that the statute defined everyone who was in a "family relationship" with J.F. as her "caretaker," that would mean that the statute was *broad*, not *vague*. Rosebear's complaint would not be with the clarity of the statute, but

with the manner in which the government exercised its discretion in deciding whom to prosecute under the statute.

And finally, Rosebear ignores the fact that, putting aside family relationships, the statute defines as a caretaker anyone who "has assumed responsibility for all or a portion of the care of a child." Minn. Stat. § 609.376 subd. 3. This provision is not vague on its face, and it is certainly not vague "as applied to the defendant's conduct." *Burgee*, 988 F.3d at 1060. As discussed above, the evidence introduced at trial indicated that Rosebear took on a parental role with respect to all of the children in her house, that she ensured that there was sufficient food to feed all of those children, and that she was the sole adult in charge of J.F. just days before J.F.'s death. Indeed, as noted, Rosebear complained of having to care for J.F. and said she was going to charge J.F.'s father $15 per hour for that caretaking. Under such circumstances, "a person of ordinary intelligence," *Williams*, 553 U.S. at 304, would understand that she "has assumed responsibility for all or a portion of the care of a child." Minn. Stat. § 609.376 subd. 3.

For these reasons, Rosebear's motion for a judgment of acquittal is denied.

## II.  NEW TRIAL

Rosebear moves in the alternative for a new trial. Under Fed. R. Crim. P. 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." "In ruling on a motion for a new trial, a district court need not view the

evidence in the light most favorable to the verdict; it may weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Collier*, 527 F.3d 695, 701 (8th Cir. 2008). But a motion for a new trial should be granted only when "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Id.* (cleaned up). The Court's authority to grant a new trial on the basis that the verdict is against the weight of the evidence must be "exercised sparingly and with caution." *Id.*

Rosebear asserts that the jury's verdict is so contrary to the weight of the evidence that the Court should grant a new trial. The Court disagrees. As explained above, the government presented ample evidence to support the jury's verdict, and the Court is confident that a "serious miscarriage of justice" did not occur. Rosebear's motion for a new trial is therefore denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motion for a judgment of acquittal or in the alternative a new trial [ECF No. 170] is DENIED.

Dated: August 20, 2024                     s/Patrick J. Schiltz
                                          Patrick J. Schiltz, Chief Judge
                                          United States District Court